IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Constantine Holmes and Celeste Holmes., | ) | |
| | ) | |
| Plaintiff, | ) | C/A No. 2:05-2901 |
| | ) | |
| vs. | ) | |
| | ) | **ORDER and OPINION** |
| Robert Donahoe and Patrick Donahoe, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.     BACKGROUND

This dispute is before the court on defendants Robert Donahoe and Patrick Donahoe's motion for summary judgment. Plaintiffs Constantine Holmes and Celeste Holmes own a house at 14 Yacht Harbor Court in Wild Dunes. Robert Donahue owns the neighboring house at 15 Yacht Harbor Court; Patrick is his son. Plaintiffs began construction of their home in September 2002, and at some point prior to April 2003, the Wild Dunes Architectural Review Committee (ARC) notified plaintiffs that various aspects of the building violated the ARC setback standards. On April 21, 2003, Constantine Holmes wrote his neighbors, notifying them of a request for a roof overhang variance of six inches on the southeast property line. Previously, the Holmes received a six inch yard variance, and changed the design of the chimney.

In response to Holmes letter, the ARC received fifteen letters opposing the request. Among these responses was an unsigned letter dated May 30, 2003 that listed several reasons why the ARC should deny the request. Robert Donahoe admits he wrote the letter. Apparently, much of the tension stems from the fact that the Holmes were constructing a six bedroom, six bath house for rental purposes (the Holmes also own a

rental home at 18 Yacht Harbor).  Defendants fear the traffic, noise and behavior of renters.  The letter objects to plaintiffs using defendants' property for access, and claims the Holmes once said the ARC rules did not apply to them.  Donahoe also contends plaintiffs have ignored ARC fines and ARC recommendations that construction cease. The letter ends with:

> **DO NOT LET THIS TRAVESTY HAPPEN!**
> The residents of Wild Dunes, which does not include this builder, pay considerable fees to ensure that disreputable builders are not allowed to disrupt our neighborhoods.  The only way to bring this house in compliance is to raze it and start again.  If it takes a court order to accomplish that, and I suspect it will, then that is what Wild Dunes should seek.
> If this building is allowed to stand why should anyone again be bothered with following ARC guidelines if they get in the way with what they want to do.

Def.'s mot. ex. C.  Tensions between the neighbors existed prior to the letter.  On April 14, 2003, Patrick Donahoe called Isle of Palms police, claiming to have a stop work order and that the Holmes' contractor was threatening him.  No such order actually existed. The contractor claimed Patrick Donahoe threatened him with a hammer.  The police report notes that Patrick Donahoe smelled of alcohol.

On August 19, 2003, plaintiffs' home was destroyed by fire.[1]  It was eighty percent complete, and subsequent investigations concluded the fire was set intentionally. Patrick Donahoe was charged with arson, but the charges were dismissed and nol prossed

---

[1] At some point prior to the fire, defendants apparently wrote another letter criticizing plaintiffs' efforts to obtain a variance.  This letter was sent to ARC members and Joel Adrian, Chairman of the ARC.  Plaintiff contend this memo is more important to the defamation cause of action than to the civil conspiracy claim.  (See def.'s mot., ex. A.)

in August 2004 without consultation with the Isle of Palms Police. (See pl.'s mot. ex. 1). Following the fire, the ARC determined that the variances approved for the previous house were still valid, and the home was rebuilt.

Plaintiffs filed this action in state court on June 27, 2005, alleging civil conspiracy and defamation. The case was removed to this court on October 11, 2005. On January 18, 2006, Judge Duffy granted plaintiffs' motion to amend their complaint to add a claim for arson as against Patrick Donahoe only.

Defendants filed a summary judgment motion as to the defamation and civil conspiracy claims on January 2, 2006. Plaintiffs concede that the statute of limitations bars the defamation claim.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when, after considering the full evidentiary record, there are no genuine issues of material fact. Fed. R. Civ. P. 56(c). When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, the burden for summary judgment may be discharged by "pointing out to the court that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Evidence should be viewed in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, a "mere scintilla" of evidence will not preclude summary judgment. The court's inquiry is "not whether there is literally no evidence, but whether there is any [evidence] upon which a jury could properly . . . find a verdict for the party" resisting summary judgment. Id. at 251.

**III.    DISCUSSION**

    **a.    Special Damages**

The tort of civil conspiracy contains three elements: (1) a combination of two or more persons; (2) for the purpose of injuring the plaintiff; and (3) causing plaintiff special damage. Kuznik v. Bees Ferry Associates, 342 S.C. 579, 610, 538 S.E.2d 15, 31 (Ct. App. 2000). The third element

> means that the complaint must describe damages that occurred as a result of the conspiracy itself, in addition to any damages alleged as a result of any other claims. That is, the damages allegedly resulting from the conspiracy must not overlap with or be subsumed by the damages resulting from the other claims.

LaBelle v. Brown & Williamson Tobacco Corp., No. 98-3225, 1999 WL 33591435 at *13 (D.S.C. March 18, 1999). Plaintiffs contend they incurred the following damages as a result of the conspiracy:

    a.    delay and additional costs in construction,
    b.    being fined for alleged covenant and restriction violations,
    c.    lost rental income due to delays in construction,
    d.    in having to alter previous construction,
    e.    were forced to incur attorneys fees and financing costs,
    f.    were subjected to the wrath of the adjoining property owners;
    g.    suffered the total loss of the property by the defendants creating such a state of hostility as to cause the plaintiffs' home to be destroyed by arson.

Compl. ¶ 7. This list is repeated verbatim in the count two of the complaint describing plaintiffs' defamation damages (with additional injuries to reputation). At the hearing, plaintiffs' counsel conceded that the civil conspiracy damages are the same as the damages requested in the defamation and arson claims. Therefore, the civil conspiracy damages are subsumed in the damages for other claims. Since the civil conspiracy damages are identical to the defamation and arson damages, plaintiffs cannot demonstrate

that the civil conspiracy damages are "in addition to any damages alleged as a result of any other claims." LaBelle, 1999 WL 33591435 at *13; see also Vaught v. Waites, 300 S.C. 201, 209, 387 S.E.2d 91, 95 (Ct. App. 1989) ("The damages sought in the conspiracy cause of action are the same as those sought in the breach of contract cause of action. Because no special damages are alleged aside from the breach of contract damages, we hold the conspiracy action is barred . . . ."). As such, plaintiffs' civil conspiracy claim fails as a matter of law.

## IV.    CONCLUSION

For the reasons stated above, it is therefore **ORDERED** that defendants Robert Donahoe and Patrick Donahoe's motion for summary judgment as to the defamation and civil conspiracy claims is **GRANTED**.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 29, 2006**
**Charleston, South Carolina**